

IN THE

# Court of Appeals of Indiana

Andres Solis Guerra,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Jul 09 2026, 10:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

July 9, 2026

Court of Appeals Case No.
25A-CR-3231

Appeal from the Lake Superior Court

The Honorable Gina L. Jones, Judge

Trial Court Cause No.
45G03-1704-FA-1

**Opinion by Judge DeBoer**
Judges Mathias and Kenworthy concur.

**DeBoer, Judge.**

## Case Summary

[1] The State charged Andres Guerra and his girlfriend, Stephanie Alvarado, with molesting Guerra's child, K.G. Before Guerra's trial, the State filed a motion in limine to keep out any reference to or evidence of a physical altercation that took place between Alvarado and K.G. near the end of a period during which Guerra allegedly molested K.G. As a result of the altercation, Alvarado pled guilty to misdemeanor battery, and a no-contact order was entered. Guerra's defense at trial was that K.G. had falsely accused him, and he wanted to present evidence that she had done so because the no-contact order was about to expire and she did not want Alvarado to move back into the house. However, between the trial court's order in limine and rulings throughout trial, Guerra was prohibited from mentioning the physical altercation, battery charge, conviction, and no-contact order. Ultimately, the jury found him guilty of two counts of child molestation. On appeal, he raises issues related to the exclusion of evidence, the sufficiency of the evidence, substantive double jeopardy, and the trial court's sentencing discretion. We affirm.

## Facts and Procedural History

[2] K.G. (born February 2003) is Guerra's biological daughter. Guerra and K.G.'s mother separated when K.G. was three years old. Growing up, K.G. and her younger brother lived with their mother but visited Guerra at his house in Hammond on weekends and in the summer. When K.G. was around eleven

years old, she woke up one night "to [Guerra] in between [her] legs[.]" Transcript Vol. 4 at 56. She did not have pants on, and Guerra's "mouth was on . . . [her] vagina . . . and he was licking[.]" *Id.* at 57. K.G. tried to make Guerra stop by squeezing his head with her legs, but he did not stop. After that incident, Guerra "continued to do sexual things to" K.G. to the point where it became "a normal thing" and K.G. could not remember a time before the abuse. *Id.* at 57, 58.

[3] When K.G. was twelve or thirteen, Guerra moved into an apartment in East Chicago with Alvarado and her two children. Guerra and Alvarado had their own child together thereafter. At the apartment, Guerra continued to regularly "us[e] his mouth on" K.G. *Id.* at 63. On one occasion, Guerra "tried to stick his penis in" K.G., but "it couldn't fit" and it hurt K.G., so he stopped. *Id.* at 62. The abuse occurred nearly every time K.G. visited Guerra, so she couldn't "pinpoint every single time it happened." *Id.* at 64. At some point, Alvarado started sexually abusing K.G. as well. It started with massages, but then Alvarado began "go[ing] down on [K.G.] too." *Id.* at 65. Eventually, Alvarado and Guerra started having sex with K.G. present, and they would involve her to "jerk [Guerra] off" or have him "go[] down on" K.G. *Id.* at 68.

[4] In January 2017, K.G. told an online friend about the sexual abuse and promised she would tell an adult. At the time, K.G. was an eighth-grade honors student at Lane Tech College Prep in Chicago. That same month, K.G. was silently reading the Greek myth of Persephone when her English teacher, Elizabeth Cramarosso, noticed she looked "physically shaky" and "disturbed."

Tr. Vol. 3 at 144. The myth contains "imagery that suggests sexual violence[,]" and Cramarosso told K.G. she didn't have to read it if it was "too much." *Id.* at 143, 144. K.G. indicated she had something to tell Cramarosso, but she seemed hesitant to share. The teacher brought K.G. to a private room and gave her space, and after a few class periods passed, K.G. told Cramarosso she had been sexually abused and "appeared relieved" after telling her. *Id.* at 152. Being a mandated reporter, Cramarosso relayed the information to the Department of Child Services (DCS).

[5] On February 20, 2017, K.G. was forensically interviewed by Lawrence Thurmond, the deputy commander of the Lake County Sheriff's Department Special Victims Unit. When Thurmond asked questions about the sexual abuse, K.G. "became a little nervous" but "spoke freely and fluently about the things that happened to her." *Id.* at 185-86. Thurmond, who had conducted over a thousand child forensic interviews, believed K.G.'s behavior was consistent with what he'd observed in other interviews. The next day, East Chicago Police Department Detective Miguel Pena interviewed Guerra. Guerra initially said he was "nervous because [he had] no idea what [the interview was] about." State's Exhibit 4(a) 4:06-4:09. After the detective told Guerra about K.G.'s allegations, Guerra called them "scary" and "alarming." *Id.* at 7:39, 8:56; Tr. Vol. 4 at 166-67. When Pena asked Guerra specific questions like whether he'd ever put his mouth on K.G.'s vagina, Guerra would "firmly" deny the misconduct but "break eye contact with" the detective. Tr. Vol. 4 at 171; *see* State's Ex. 4(a) at 10:16-10:50.

[6]     On April 24, 2017, the State charged Guerra and Alvarado with child molesting. Guerra was charged with committing Class A felony child molesting between February 1, 2013 and June 30, 2014, and Level 1 felony child molesting between July 1, 2014 and October 31, 2015.[1] Guerra was tried separately from Alvarado, and she did not testify at his three-day jury trial in October 2025.

[7]     The day before the trial began, the State filed a motion in limine to exclude evidence related to a "physical altercation" that occurred between K.G. and Alvarado on October 30, 2015. Appellant's Appendix Vol. 2 at 69-70. After law enforcement investigated the altercation, Alvarado was charged with Level 6 felony battery resulting in injury to a child under fourteen. As part of the criminal case, the court entered a no-contact order prohibiting contact between

---

[1] During the period the Class A felony was alleged to have occurred, February 1, 2013 through June 30, 2014, Indiana Code section 35-42-4-3 read in relevant part:

> (a) A person who, with a child under fourteen . . . years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if:
>
>> (1) it is committed by a person at least twenty-one . . . years of age[.]

The statute was amended on July 1, 2014, and from then through the end of the charged period for the Level 1 felony, the statute read:

> (a) A person who, with a child under fourteen . . . years of age, knowingly or intentionally performs or submits to sexual intercourse or other sexual conduct (as defined in IC 35-31.5-2-221.5) commits child molesting, a Level 3 felony. However, the offense is a Level 1 felony if:
>
>> (1) it is committed by a person at least twenty-one . . . years of age[.]

Ind. Code § 35-42-4-3(a)(1) (as amended July 1, 2014); *see Adcock v. State*, 22 N.E.3d 720, 725 n.6 (Ind. Ct. App. 2014) (noting the 2014 amendment replaced "deviate sexual conduct" with "other sexual conduct" and showing the phrases carry the same definition); *Boling v. State*, 982 N.E.2d 1055, 1057 (Ind. Ct. App. 2013) (noting that although the pre-amendment version of the child molesting statute was silent as to mens rea, "[t]he culpability requirement . . . [was] knowingly or intentionally.").

Alvarado and K.G. through January 8, 2017. Alvarado pled guilty to Class A misdemeanor battery in July 2016 and received one year of probation. Pursuant to Indiana Evidence Rules 401, 403, and 608(b), the State's motion sought to prohibit "defense counsel from presenting any evidence of or [making] any mention of in closing, direct, or cross-examination[,] the physical altercation and subsequent criminal case of Stephanie Alvarado, or of the No Contact Order associated with said case." *Id.* at 69-70.

[8] Before jury selection the next day, the court addressed the State's motion. Guerra's attorney confirmed many of the factual details and objected to the motion as follows:

> Alvarado[,] who is charged separately . . . , she was previously charged with battery as a felony in a separate . . . proceeding back in 2015. The alleged victim in this case was the victim in that case. There was some allegation that [Alvarado] and [K.G.] got into a fistfight. [Alvarado] gets charged with a crime. She's charged with a felony. The case is pending for a while. She pleads guilty to a misdemeanor. She gets a year probation, gets a no contact order, all those things were in place.
>
> Now what happened during that period of time, DCS stepped in. . . . Alvarado, [Guerra's] girlfriend[,] had to move out of the house. Mr. Guerra got custody of her children while she was out of the house, so he was living with him and [Alvarado's] child, her older children, and then he would see his kids on the weekend. But that whole time Ms. Alvarado was . . . out of the house and the kids were visiting for the weekend. So this . . . information is part of the story.

Now, I'm not planning on telling the story where there was mutual combat because the State's trying to ask that that battery case not come into the evidence because it shows perhaps . . . a prior bad act from the alleged victim in this case. But the only person who was charged with a crime was . . . Alvarado. The alleged victim in this case was the victim in that case, so if we're going to tell the story, . . . [w]e can just talk about how Ms. Alvarado was charged with a crime[,] and we can make sure that the jury doesn't get [the] impression that [K.G.] did anything wrong that day if that's what the State's worried about[.] . . . But this is all part of the story[,] and it goes to our theory of the defense[.] . . . When Ms. Alvarado was on probation the plan was reunification. She was going to come back and . . . live as a family in the household together when the case was over. So this is all part of the story. So if the State's concerned that we're trying to run the alleged victim [K.G.] through the mud, that's not our intention . . . . [T]hat's my objection for the battery case.

Tr. Vol. 2 at 8-10.

[9]    In response, the State argued the information was "irrelevant because [it] involve[d] . . . Alvarado[,]" who was not going to testify at Guerra's trial. *Id.* at 10. It said the evidence would portray K.G. as "a fighter" who "gets into heated arguments with [Alvarado]." *Id.* at 11. The State also argued that even if the evidence tended to show K.G. had "a motive to fabricate [sexual abuse allegations] against . . . Alvarado[,]" it did not suggest the same as to Guerra. *Id.* "[D]uring that time when the no contact order was in place against [Alvarado], [K.G.] still had visitation with [Guerra]." *Id.* The State also noted the "risk [of] confusing the jury by introducing this little mini trial of what happened between [K.G.] and [Alvarado]." *Id.* at 12.

[10] In reply, defense counsel argued the evidence gave K.G. "a reason to make up a story against [Guerra] and [Alvarado] because [Guerra] was telling [K.G.] that . . . her abuser's going to come back and live with them, and then this allegation was brought to light . . . ." *Id.* at 13-14. He also said the evidence was relevant to show "there was a delay in reporting" because K.G. had talked to law enforcement about the physical altercation but failed to disclose she was being sexually abused. *Id.* at 16. Ultimately, the court granted the State's motion in limine in part, permitting "counsel to inquire about the relationship with [Alvarado]" but not the physical altercation. *Id.* at 18.

[11] The State's first witness was Cramarosso, and she testified about K.G.'s disclosure. Next, Thurmond testified about his forensic interview with K.G. The State then called Angela Rodts, the director of the Dunebrook Child Advocacy Center. Neither Rodts nor her organization was involved in K.G.'s forensic interview, but she testified generally about child forensic interview procedures, the prevalence of delayed disclosures, that most children who disclose sexual abuse give true reports, and that physical evidence is rarely available in child sexual abuse cases.

[12] K.G., who was twenty-two years old at the time of trial, testified next. On direct examination, she described the sexual abuse and her disclosure of that abuse consistent with the facts described above. The State also asked her to "tell [the jury] a little bit about [her] relationship with [Alvarado] outside of just the sexual part of it[,]" specifically, whether she got "along with her[.]" Tr. Vol. 4 at 66. K.G. said they "used to get along well" and "have girl time"

together, including going to the movies and painting their nails. *Id.* She testified that she had "trust[ed]" and "liked [Alvarado]." *Id.* at 67. K.G. then explained that the sexual abuse had "affected [her] life in every way[,]" especially when she was younger, but she was doing "a lot better now." *Id.* at 71, 72. She elaborated that she had been diagnosed with PTSD and depression, took antidepressants for a while, and spent time in an inpatient facility to address her struggles with self-harm.

[13] On cross-examination, defense counsel asked to "make a motion outside the presence of the jury" because he believed "the questions the State asked on direct examination . . . opened up the door in relation to exploring the relationship between [K.G.] and Stephanie Alvarado." *Id.* at 85. After the jury was excused, defense counsel argued K.G.'s testimony on direct had painted a false "picture that [she] and [Alvarado] got along[.]" *Id.* at 92. He again summarized the timeline following the October 2015 physical altercation and complained that "to not let us talk about it deprives [Guerra] of his constitutional right[] to present his theory of the case." *Id.* at 92. He reiterated that he did not "want to get into the facts of" the incident or "paint [K.G.] in a bad light[,]" but he needed to introduce "something that explains why [K.G.] wasn't having contact with [Alvarado] and then [that Guerra told her] about the plan of reunification, [because] that's what we believe led to these charges." *Id.*

[14] After the State reasserted its position, the court stated the direct examination had not opened the door despite the characterization of K.G. and Alvarado's "relationship as hunky-dory great" not being "accurate [to a] certain point." *Id.*

at 97. The court still did not believe "identifying the battery and subsequent DCS case" was appropriate but said it would allow narrow impeachment evidence. *Id.* at 95-96. Defense counsel argued the disputed evidence was "fodder for cross-examination" because K.G. spoke to officers about Alvarado in 2015 and "never mentioned that she was being molested by [Alvarado] . . . ." *Id.* at 98. But the court responded, "I would agree . . . if [Alvarado] was in that seat . . . but she's not. This isn't [Alvarado's] case." *Id.* at 99. As part of his offer of proof, defense counsel introduced the 2015 charging information against Alvarado, probable cause affidavit, order finding probable cause, and plea agreement. *See* Exhibits at 15-18. Thereafter, the attorneys and the court worked at length to configure "real[ly] specific" questions defense counsel could ask K.G. consistent with the court's rulings. Tr. Vol. 4 at 112.

[15] Eventually, defense counsel asked K.G.:

> Q: . . .Was there a time period that you recall when you would go for a weekend and [Alvarado] would not be there, like months at a time?
>
> A: Yeah.
>
> Q: At the time that you talked to Ms. Cramarosso at school, you hadn't seen [Alvarado] for a long period of time? Would you say that's correct?
>
> A: I guess so.
>
> Q: Over . . . a year, correct?

A: Yeah. . . .

. . . .

Q: . . . So at some point, you recalled having a conversation with a police officer? I'm not expecting you to remember every detail, but do you remember having a conversation with a police officer and not mentioning to the police officer that both your dad and your dad's girlfriend, [Alvarado], were sexually touching you?

A: Yeah.

Q: We could agree that you didn't say anything, correct?

A: Yes.

Q: Okay. And then years later you made a disclosure to Ms. Cramarosso at school, correct?

A: Yes.

*Id.* at 123-25. After another sidebar, K.G. confirmed she had not been touched inappropriately during the period of time she stayed with Guerra when Alvarado was not there.

[16] On the third and final day of trial, Pena testified about interviewing Guerra on February 21, 2017 and law enforcement's investigation of K.G.'s allegations. Guerra then elected not to testify on his own behalf. In closing, defense counsel argued K.G. falsely accused Guerra, which he alleged "had to do with the custody and divorce battle" between Guerra and K.G.'s biological mother, who

had passed away.  Tr. Vol. 5 at 45.  He also attacked the credibility of the State's witnesses and argued there was a "lack of investigation" in the case.  *Id.* at 53.

[17]  After deliberating, the jury found Guerra guilty of both counts of child molestation.  The court imposed two forty-year sentences to be served consecutively in the Department of Correction.  Guerra now appeals.

## Discussion and Decision

## 1. Exclusion of Evidence

[18]  Guerra argues the trial court erred by excluding all evidence related to Alvarado and K.G.'s October 2015 physical altercation and Alvarado's subsequent battery charge, conviction, and no contact order.  A trial court has broad discretion to admit or exclude evidence.  *Russell v. State*, 234 N.E.3d 829, 858 (Ind. 2024), *cert. denied*.  "We will reverse only if the trial court's ruling was clearly against the logic and effect of the facts and circumstances before it and the errors affect a party's substantial rights."  *Jones v. State*, 258 N.E.3d 1063, 1075 (Ind. Ct. App. 2025), *trans. denied*.[2]

---

[2] Before trial, the trial court partially granted the State's motion in limine to exclude the disputed evidence. "A motion in limine is a preliminary ruling that, in itself, does not result in reversible error." *McBride v. State*, 261 N.E.3d 274, 278 (Ind. Ct. App. 2025), *reh'g denied*.  Moreover, to preserve a claim of error based on the exclusion of evidence, the defendant must, as Guerra did here, make an appropriate offer of proof.  *Id.* at 279; *see* Ind. Evidence Rule 103(a)(2) (2025).  The State does not argue Guerra failed to preserve this issue for appeal.  We also note that after July 1, 2026, a party need not renew an offer of proof to preserve a claim of error once the trial court makes a definitive ruling on the record—before or during trial—including a ruling on a motion in limine.  Evid. R. 103(b) (as amended July 1, 2026).

[19] Criminal defendants must be afforded "a meaningful opportunity to present a complete defense." *Crossland v. State*, 256 N.E.3d 517, 528 (Ind. 2025) (quoting *Kubsch v. State*, 784 N.E.2d 905, 924 (Ind. 2003)). They have a related right to cross-examine witnesses. *Koenig v. State*, 933 N.E.2d 1271, 1273 (Ind. 2010).[3] A key component of the right to present a defense is the defendant's prerogative to present his own version of the facts. *Roach v. State*, 695 N.E.2d 934, 939 (Ind. 1998), *reh'g granted*. This gives the jury an opportunity to contrast the defendant's version of events with the prosecution's before deciding where the truth lies. *Id.* "Although the right to present a defense 'is of the utmost importance, it is not absolute.'" *Marley v. State*, 747 N.E.2d 1123, 1132 (Ind. 2001) (quoting *Roach*, 695 N.E.2d at 939). "The accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Parker v. State*, 965 N.E.2d 50, 53 (Ind. Ct. App. 2012) (quoting *Marley*, 747 N.E.2d at 1132), *trans. denied*.

[20] One such rule is Evidence Rule 402, which provides that only relevant evidence can be admitted. Another is Rule 403, under which "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,

---

[3] The rights to present a defense and cross-examine witnesses, which were clearly implicated here by the trial court's decisions to prohibit certain questioning and evidence, stem from several provisions of the United States Constitution. *See Crossland*, 256 N.E.3d at 528; *Koenig*, 933 N.E.2d at 1273. While Guerra's trial counsel alleged exclusion of the disputed evidence amounted to a constitutional violation, *see* Tr. Vol. 4 at 92, Guerra fails to argue the same on appeal.

misleading the jury, undue delay, or needlessly presenting cumulative evidence." Ind. Evidence Rule 403. Under this rule, the bar is high for unfair prejudice, so "courts err on the side of admissibility and consider whether there is risk that a jury will 'substantially overestimate the value of the evidence or that the evidence will arouse or inflame the passions or sympathies of the jury.'" *Schnitzmeyer v. State*, 168 N.E.3d 1041, 1045 (Ind. Ct. App. 2021) (quoting *State v. Seabrooks*, 803 N.E.2d 1190, 1194 (Ind. Ct. App. 2004), *reh'g denied*). When a trial court could have reasonably admitted or excluded evidence under Rule 403, we will not "second-guess the trial court's determination . . . ." *Snow v. State*, 77 N.E.3d 173, 179 (Ind. 2017).

[21] On appeal, the State argues Alvarado and K.G.'s physical altercation and its aftermath were irrelevant to Guerra's trial, but to the extent that evidence had any probative value, it was properly excluded under Rule 403 because "it was prejudicial to the State and substantially likely to confuse the jury."[4] Appellee's Brief at 21 (arguing the disputed evidence "had minimal, if any, probative value").

---

[4] Although the State's motion in limine raised Evidence Rule 608(b) as a basis for exclusion and Guerra refuted this notion in his initial appellate brief, the State makes no 608(b) argument on appeal. Rule 608(b) provides:

> **(b) Specific Instances of Conduct.** Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of another witness whose character the witness being cross-examined has testified about.

[22] Evidence is relevant "if . . . it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence[.]" *See* Evid. R. 401. When addressing the State's motion in limine before trial, Guerra argued the excluded evidence was relevant for three reasons: (1) the details were "all part of the story[;]" (2) the evidence showed K.G. had "a reason to make up a story against [him][;]" and (3) the evidence illustrated K.G.'s "delay in reporting." Tr. Vol. 2 at 10, 13, 16. On appeal, Guerra focuses on the third reason, arguing "[t]he jury had every right to know that K.G. had previously met with the police regarding Alvarado's conduct towards her, and did not report the sexual abuse." Appellant's Br. at 38. He frames this as a matter of impeaching K.G.'s credibility.

[23] As the State notes, Guerra was permitted to establish on cross-examination that K.G. talked to law enforcement during a period she was not seeing Alvarado and failed to tell them she'd been repeatedly molested. In other words, the jury heard she had an earlier opportunity to disclose the sexual abuse and failed to do so. The critical issue then becomes whether it was relevant *why* that discussion with police took place (the physical altercation) and its outcome (charges, conviction, no-contact order). The relevancy of those details to Guerra's trial hinged on whether they tended to prove his defense that K.G. fabricated allegations against him. And for that to be the case, the evidence must have tended to prove K.G. had a motivation to falsely accuse Guerra.

[24] On this point, Guerra failed to provide a compelling argument below or on appeal. In opposition to the State's motion in limine, Guerra argued the

evidence showed K.G. had "a reason to make up a story against [him] and [Alvarado] because [Guerra] was telling her that . . . her abuser's going to come back and live with them, and then this allegation was brought to light . . . ." Tr. Vol. 2 at 13-14. However, he didn't articulate why this would have led K.G. to falsely accuse *him* of child molesting. And as the State explained, "even if" the excluded evidence tended to show K.G. had "a motive to fabricate against" Alvarado, it did not show the same as to Guerra. *Id.* at 11. Indeed, K.G. continued to have regular visitations with Guerra while Alvarado was restricted from seeing her. After giving its oral order in limine, the court stressed it did not "want to shift the blame" and "try [Alvarado] here." *Id.* at 19. Later, during a discussion outside the presence of the jury during K.G.'s cross-examination, defense counsel argued the excluded evidence was "fodder for cross-examination" to show her initial opportunity and failure to disclose. Tr. Vol. 4 at 98. The court responded that it "would agree . . . if [Alvarado] was in that seat . . . but she's not. This isn't [Alvarado's] case." *Id.* at 99. Subsequently, the court allowed Guerra (without getting into the excluded evidence) to elicit testimony from K.G. that before her ultimate disclosure she had talked to law enforcement yet failed to disclose that Alvarado and Guerra had molested her.

[25] On this record, we conclude the court appropriately threaded the needle, protecting Guerra's rights to present a defense and cross-examine K.G. while also acting within its discretion to exclude evidence that was irrelevant to Guerra's case.

Further, we note that even if the excluded evidence had some relevance, its probative value was minimal, and it could have been properly excluded under Rule 403. We agree with the State that evidence of the tumultuous history between Alvarado and K.G. "was likely to confuse the jury by shifting the focus of the trial onto Alvarado[.]" Appellee's Br. at 22. Though Guerra offered to mitigate the potential for unfair prejudice by saying he would not "drag [K.G.] through the mud[,]" "get into the facts of" the incident, or "paint [K.G.] in a bad light[,]" the potential for confusion remained substantial. Tr. Vol. 2 at 14; Tr. Vol. 4 at 92. This was especially so given Guerra's failure to explain why the altercation between Alvarado and K.G. would have motivated K.G. to fabricate allegations against him. *See Hinkle v. State*, 97 N.E.3d 654, 663-64 (Ind. Ct. App. 2018) (affirming the exclusion of evidence related to the child-victim's drug use because the defendant's theory that the victim fabricated child molesting allegations to avoid facing consequences for his drug use was mere "speculation"), *trans. denied*; *cf. Hyser v. State*, 996 N.E.2d 443, 448-50 (Ind. Ct. App 2013) (concluding the defendant's right to present a defense was violated when he was precluded from presenting evidence that tended to prove someone he reported for child abuse fabricated child molesting allegations against him in retaliation, and the probative value of that evidence was not substantially outweighed by the danger of unfair prejudice), *reh'g denied*.

Finally, Guerra argues "[t]he State opened the door to the admission of" the excluded evidence. Appellant's Br. at 39. "Opening the door refers to the principle that where one party introduces evidence of a particular fact, the

opposing party is entitled to introduce evidence in explanation or rebuttal thereof, even though the rebuttal evidence otherwise would have been inadmissible." *Sampson v. State*, 38 N.E.3d 985, 992 n.4 (Ind. 2015). "The door may be opened when the trier of fact has been left with a false or misleading impression of the facts." *Griffith v. State*, 259 N.E.3d 1025, 1034 (Ind. Ct. App. 2025) (quoting *Clark v. State*, 915 N.E.2d 126, 130 (Ind. 2009), *reh'g denied*).

[28] On direct, the State asked K.G. to "tell [the jury] a little bit about [her] relationship with [Alvarado] outside of just the sexual part of it[,]" including whether they got along with each other. Tr. Vol. 4 at 66. K.G. responded that they "used to get along well" and do certain activities together. *Id.* She also testified that she had "trust[ed]" and "liked [Alvarado]." *Id.* at 67. At a sidebar during K.G.'s cross-examination, defense counsel argued the State had "opened up the door in relation to exploring the relationship between [K.G.] and [Alvarado]." *Id.* at 85. While the court observed that the characterization of K.G. and Alvarado's "relationship as hunky-dory great" was "not accurate [to a] certain point[,]" it found the door had not been opened for Guerra to introduce the excluded evidence. *Id.* at 97.

[29] We conclude the trial court did not abuse its discretion by finding K.G.'s testimony on direct examination did not open the door for Guerra to elicit testimony or introduce evidence about the October 2015 physical altercation and its consequences. First, K.G.'s testimony seemed to refer to her relationship with Alvarado *before* the October 2015 incident. A door is only opened "[w]here evidence on a certain issue is introduced by one party, and it

appears likely that the other party will be prejudiced unless he is permitted to introduce contradictory or explanatory evidence[.]" *Pavey v. State*, 764 N.E.2d 692, 705 (Ind. Ct. App. 2002) (first alteration in original) (quoting *Fahler v. Freeman*, 241 N.E.2d 394, 396 (Ind. App. 1968)), *trans. denied*. Again, whether their relationship outside the sexual abuse was good, bad, or even eventually ruptured due to a physical altercation had no bearing on whether K.G. would later falsely accuse *Guerra* of molesting her. Guerra was also free to make the point that K.G.'s description of her relationship with Alvarado was dubious considering the sexual abuse K.G. was supposedly suffering at her hands. Additionally, the State's questioning was entirely consistent with the court's order in limine that counsel could "inquire about [K.G.'s] relationship with [Alvarado]" but not the physical altercation. Tr. Vol. 2 at 18. Finally, the totality of K.G.'s testimony showed she had complicated feelings about the sexual abuse while it was happening and before her disclosure. *See* Tr. Vol. 4 at 68, 69 (K.G. testifying she still loved Guerra while the sexual abuse was happening, he apologized on one occasion, and although she "knew it wasn't probably right, . . . it was what [she] was used to"). Thus, her testimony that her relationship with Alvarado had positive aspects outside of the sexual abuse was not false or misleading.

[30] In short, we conclude the trial court did not abuse its discretion by excluding evidence of the October 2015 physical altercation between Alvarado and K.G. and Alvarado's subsequent battery charge, conviction, and no-contact order.

## 2. Sufficiency of the Evidence

[31]    Guerra also argues there was insufficient evidence to support his convictions. We review sufficiency-of-the-evidence claims with deference, mindful that it's the fact-finder's role to weigh the evidence and judge witness credibility. *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024). "A conviction is supported by sufficient evidence if 'there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Id.* (quoting *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015)). In making this determination, we consider only the evidence and reasonable inferences that support the jury's verdict. *Id.*

[32]    Guerra does not challenge any of the substantive elements the State had to prove to convict him of Class A and Level 1 felony child molestation. Rather, he argues the convictions cannot stand because the State failed to prove "when the incidents occurred other than that K.G. testified they occurred [when she was] between the ages of 11-13." Appellant's Br. at 33 ("No reasonable fact finder should have found Guerra guilty without [at] the very minimum a more specific date range for the offenses.").[5]

---

[5] To be clear, neither here nor in his double jeopardy argument has Guerra raised an issue regarding the principle of juror unanimity. *See Baker v. State*, 948 N.E.2d 1169, 1177 (Ind. 2011) (holding that "if the State decides not to . . . designate [specific acts on which it relies to prove a particular charge], then the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged"), *reh'g denied*.

[33] But generally, "the precise time and date of the commission of a child molestation offense is not regarded as a material element of the crime." *Baker v. State*, 948 N.E.2d 1169, 1174 (Ind. 2011), *reh'g denied*. Our Supreme Court "has long recognized 'that time is not of the essence in the crime of child molesting. It is difficult for children to remember specific dates, particularly when the incident is not immediately reported as is often the situation in child molesting cases.'" *Id.* (quoting *Barger v. State*, 587 N.E.2d 1304, 1307 (Ind.1992), *reh'g denied*). "The exact date becomes important only in limited circumstances, including the case where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies." *Keister v. State*, 203 N.E.3d 548, 553 (Ind. Ct. App. 2023) (quoting *Barger*, 587 N.E.2d at 1307).

[34] Here, a timeline was relevant insofar as the State was required to prove Guerra molested K.G. at least once between February 1, 2013 and June 30, 2014, to convict him of Class A felony child molesting, and at least once between July 1, 2014 and October 31, 2015, to convict him of Level 1 felony child molesting. Guerra does not argue the State failed to prove this, but even if he had made that argument, K.G.'s testimony that she was regularly molested for multiple years between the approximate ages of eleven and thirteen was sufficient to do so. *See* Tr. Vol. 4 at 54-68.

## 3. Double Jeopardy

[35] Next, Guerra purports to argue "[t]he [t]rial [c]ourt violated the Indiana Constitution's prohibition against double jeopardy[.]" Appellant's Br. at 23.

He claims to raise a matter of first impression: when there is a change in the way a statute is classified (here, from a Class A felony to a Level 1 felony) but "the elements of [the] crime [remain] substantially the same, . . . is double jeopardy violated" by "charging a defendant with [two] separate crimes?" Appellant's Reply Br. at 4, 8. We conclude Guerra has waived review of this issue for two reasons.

First, Guerra impermissibly altered his argument in his reply brief. *See Chupp v. State*, 830 N.E.2d 119, 126 (Ind. Ct. App. 2005) ("An issue not raised in an appellant's brief may not be raised for the first time in a reply brief."). While Guerra mentioned the statute change in his opening brief, he focused on whether his convictions violated the continuous crime doctrine, an argument with its own problems given the development of substantive double jeopardy case law. *See Jones v. State*, 159 N.E.3d 55, 61 (Ind. Ct. App. 2020) ("*Wadle* [*v. State,* 151 N.E.3d 227 (Ind. 2020)] and *Powell* [*v. State*, 151 N.E.3d 256 (Ind. 2020)] not only overruled the constitutional substantive double jeopardy test in *Richardson* [*v. State*, 717 N.E.2d 32 (Ind. 1999)], they also swallowed statutory and common law to create one unified framework for substantive double jeopardy claims—including the continuous crime doctrine."), *trans. denied*.

Specifically, he argued that "because [his] sexual acts on K.G. were not distinct and separate acts, they were all the exact same sexual act (i.e. performing oral sex on K.G.)." Appellant's Br. at 30. Despite acknowledging he "performed oral sex on K.G. over a period of time[,]" *id.* at 31, he claimed he "committed [one] continuous act of 'deviate sexual conduct,' and 'other sexual acts,' on

K.G.: performing oral sex on K.G[,]" *id.* at 32.[6]  Guerra's argument

misunderstands what it means to receive "multiple convictions for the same

offense in a single trial."  *Moyers v. State*, 277 N.E.3d 33, 36 (Ind. 2026); *see*

*Jones*, 159 N.E.3d at 62 (noting the last step of both *Wadle* and *Powell* involves

analyzing "whether the defendant's actions were 'so compressed in terms of

time, place, singleness of purpose, and continuity of action as to constitute a

single transaction.'" (quoting *Wadle*, 151 N.E.3d at 249; *Powell*, 151 N.E.3d at

264)).  It defies all logic that an act of child molestation could be so compressed

in time, place, singleness of purpose, and continuity of action with another act

of child molestation performed a day, week, month, or year earlier simply

because both offenses were committed by performing oral sex.  If that were the

case (it is not), child predators could avoid being convicted of and punished for

multiple counts of child molestation that may have spanned years by repeatedly

engaging in the same method of molestation.  *See White v. State*, 264 N.E.3d 99,

106 (Ind. Ct. App. 2025) (the prohibition against substantive double jeopardy

"does not mean that the State cannot bring multiple charges against a defendant

under the same statutory language for multiple, discrete acts").

---

[6] This argument also disregards evidence showing Guerra committed child molestation in another manner—by sexual intercourse.  K.G. testified that Guerra "tr[ied] to penetrate [her] one time" at the apartment but it "didn't work" because his penis "couldn't fit."  Tr. Vol. 4 at 62.  "Proof of the slightest penetration of the sex organ, including penetration of the external genitalia, is sufficient to sustain a conviction for child molestation based on sexual intercourse."  *Padilla v. State*, 259 N.E.3d 356, 360 (Ind. Ct. App. 2025) (quoting *Boggs v. State*, 104 N.E.3d 1287, 1289 (Ind. 2018)).

[38] Second, the question Guerra asks us to answer has nothing to do with double jeopardy. Indeed, Guerra himself concedes "neither *Wadle* nor *Powell*[] are applicable to the current case[.]" Appellant's Reply Br. at 6. And besides speculation, he provides no other cogent argument explaining why charging him with two counts of child molesting was improper. *See Lampitok v. State*, 817 N.E.2d 630, 636 (Ind. Ct. App. 2004) ("The decisions whether to prosecute and what charges to file are within the prosecutor's discretion."), *reh'g denied, trans. denied*; *Baker*, 948 N.E.2d at 1174 (noting it can be difficult to charge the defendant with "specific incidents" in child sexual abuse cases when there has been a "pattern of abuse"). Thus, we conclude Guerra has waived this issue for review. *See* Appellate Rule 46(A)(8)(a) (stating appellant's contentions must be "supported by cogent reasoning"); *Willet v. State*, 151 N.E.3d 1274, 1277 (Ind. Ct. App. 2020) ("It is well established that failure to present a cogent argument results in waiver on appeal.").

## 4. Sentencing Discretion

[39] Finally, Guerra argues the trial court erred in sentencing because it "fail[ed] to take [his] lack of any criminal history into account as a mitigating factor." Appellant's Br. at 34. The determination of mitigating factors, like sentencing decisions generally, "rest[s] within the sound discretion of the trial court." *Wills v. State*, 269 N.E.3d 1273, 1281-82 (Ind. Ct. App. 2025), *trans. denied*. To show the court abused its discretion by omitting a mitigating factor that was advanced for consideration, a defendant must show "the mitigating evidence [was] both significant and clearly supported by the record." *Id.* at 1282. That said, the

sentencing court has no obligation to credit the defendant's contentions or evidence regarding a mitigating factor, explain why it rejected a factor, or find a factor mitigating simply because there is some evidence to support it. *Russell v. State*, 234 N.E.3d 829, 847-48 (Ind. 2024), *cert. denied*.

[40] A lack of criminal history is not always a significant mitigating factor that must be identified at sentencing. *Williams v. State*, 997 N.E.2d 1154, 1164 (Ind. Ct. App. 2013) (the trial court did not abuse its discretion in declining to find the defendant's lack of criminal history mitigating in a multi-count child molesting case). Here, despite having no prior criminal convictions, the trial court had ample reason to believe Guerra had been flouting the law for some time. The evidence showed Guerra had repeatedly molested his own daughter for multiple years and even involved his girlfriend in the abuse. *See Parker v. State*, 273 N.E.3d 500, 505 (Ind. Ct. App. 2025) (noting in years-long child molesting cases, a defendant's lack of criminal history "is a testament to his criminal conduct being kept secret rather than to his being a law-abiding citizen"). Under these circumstances, we cannot say the trial court abused its discretion by failing to identify Guerra's lack of criminal history in mitigation.

[41] And even if the court did err in this respect, we "remand for resentencing only if 'we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.'" *Ackerman v. State*, 51 N.E.3d 171, 194 (Ind. 2016) (quoting *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)), *cert. denied*. Here, where the court found several other valid and

unchallenged aggravating factors, including (1) that Guerra violated a position of care and trust, (2) the heinous nature of the repeated molestations, and (3) that K.G. suffered significant harm as a result of the offenses, we are confident the trial court would have imposed the same sentence had it identified Guerra's lack of criminal history as a mitigating factor. *See McCoy v. State*, 856 N.E.2d 1259, 1262 (Ind. Ct. App. 2006) ("[A] 'position of trust' by itself constitutes a valid aggravating factor, which supports the maximum enhancement of a sentence for child molesting.").[7]

## Conclusion

[42] For the foregoing reasons, we affirm Guerra's convictions for Class A felony child molesting and Level 1 felony child molesting.

[43] Affirmed.

Mathias, J., and Kenworthy, J., concur.

---

[7] In the last paragraph of his sentencing argument, Guerra asks us to exercise our authority under Appellate Rule 7(B) to "reduce [his] sentence to 20 years on each offense in light of his lack of any criminal history[.]" Appellant's Br. at 35. However, it is well-established that Rule 7(B) review and challenges to the trial court's identification of aggravating and mitigating factors "are distinct [claims] and are to be analyzed separately." *Merriweather v. State*, 151 N.E.3d 1281, 1285 n.1 (Ind. Ct. App. 2020). Consequently, "inappropriate sentence argument[s] [are] waived . . . when the defendant claims to be making a 7(B) argument but instead asserts the trial court erred in its identification or weighing of aggravators and mitigators[.]" *Connor v. State*, 58 N.E.3d 215, 219 n.3 (Ind. Ct. App. 2016). Because Guerra clearly argues his lack of criminal history should have been considered a mitigating factor and has not provided a standard of review or cogent argument that his sentence is inappropriate in light of the nature of his offenses and his character, he has waived 7(B) review.

ATTORNEY FOR APPELLANT

Andrew P. Martin
Miller Sachs & Hess, P.C.
Crown Point, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Rebekah D. Bennett
Deputy Attorney General
Indianapolis, Indiana